UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW L. MEEKS, II, | Case No. 3:15-cv-00627-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| SORSI, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Partial Motion to Dismiss. (ECF Nos. 18, 18-1, 18-2.) Plaintiff filed a response. (ECF No. 22.) Defendants filed a response. (ECF Nos. 23, 24.)

After a thorough review, it is recommended that Defendants' motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id*.) Defendants are Mark Sorci[1], Ray East, Tara Carpenter, William Sandie and Sheryl Foster.

On screening, Plaintiff was permitted to proceed with claims under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 (RLUIPA), in Counts I and III. (Screening Order, ECF No. 5.) He also was allowed to proceed with a retaliation claim in Count II.

---

[1] Named in the complaint as Sorsi. (ECF No. 6 at 1, 2.)

In Count I, he alleges he is Muslim and observes the holy month of Ramadan which fell between June 17 and July 18 in 2015. (ECF No. 6 at 5.) He contends that he and other prisoners at LCC were approved to leave their cells at 4:00 a.m. to access the tier to eat before sunrise and participate in prayer services and Quran readings. (*Id*. at 5-6.) He avers that Sorci refused to let him out of his cell on June 20, 2015, and again on June 24, 2015. (*Id*. at 6-7.) On June 24, Sorci also refused to open the unit's activity room which had been approved for prayer time. (*Id*.)

In Count II, Plaintiff alleges that he filed a grievance regarding Sorci not allowing him out of his cell to participate in Ramadan, and then Sorci conducted a "shakedown" of his cell which left his cell in disarray with his Quran desecrated on the floor. (*Id*. at 9.)

In Count III, Plaintiff alleges that he is a member of the Moorish Science Temple of America (MSTA), an American Islamic organization which recognizes Friday as a holy day. (*Id*. at 11.) He claims that administrators at LCC approved a Friday evening service for MSTA practitioners to be held in the prison's chapel. (*Id*.) Plaintiff was not allowed to attend these services because he was not a "Level 1" prisoner. (*Id*.) He informed East, Carpenter, Sandie and Foster about the illegality of denying Level II and III prisoners access to religious services, but they still refused to allow him to attend. (*Id*.)

Defendants have filed a Partial Motion to Dismiss as to Count I. (ECF No. 18.) They argue that as of March 19, 2015, Plaintiff modified his faith affiliation from Islam to MSTA, and MSTA believers observe Ramadan in October, between the hours of 7:00 a.m. and 7:00 p.m., and not in the June to July period with "orthodox" Muslims. (ECF No. 18 at 2-3; ECF No. 18-1 at 2; ECF No. 18-2.)

## II. APPLICABLE LEGAL STANDARD

Preliminarily, the court notes that Defendants move to dismiss Count I for failure to state a claim based on *Nevada* Rule of Civil Procedure 12(b)(5) (*see* ECF No. 18 at 2-3), even though this action was filed in *federal* court and the claims that are the subject of this motion are brought pursuant to the United States Constitution and a federal statute.

Even construing this motion as one for failure to state a claim under *Federal* Rule of Civil Procedure 12(b)(6), as a general rule, the court may not consider any material beyond the

pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). Defendants' motion relies on evidence outside of the complaint, including Plaintiff's Faith Group Affiliation Declaration Form (ECF No. 18-1), and NDOC's Faith Group Overview (ECF No. 18-2); therefore, the court must convert Defendants' motion into one for summary judgment.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
>
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

### III. DISCUSSION

**A. Count I Allegations**

Plaintiff's Count I allegations bear repeating in some detail. Plaintiff avers that he is a Muslim prisoner, and a serious tenet of his faith is participation in the annual rites undertaken by Muslims during the holy month of Ramadan. (ECF No. 6 at 5.) The rites include abstaining from food during daylight hours for the thirty-day period and attending congregational prayer five times a day, starting with a pre-dawn prayer and sunrise reading each day. (*Id.*) In 2015, he alleges that the holy month of Ramadan fell between June 17 and July 18. (*Id.*) He goes on to claim that LCC administrators approved all Muslim prisoners who were "signed up," including

Plaintiff, to exit their cells at 4:00 a.m. to have early morning access to the tier and activities room so they could eat their food before sunrise and participate in congregational prayers and readings of the Quran. (*Id*. at 5-6.) Plaintiff was elected to lead the congregation in prayer, the call to prayer and reading of the Quran. (*Id*. at 6.) On June 20, 2015, he contends that Sorci refused to open the cell doors at 4:00 a.m., and when Plaintiff asked him about it he said: "I'm not a wake up service for you Muslims!" (*Id*.) Then on June 24, 2015, Sorci opened the cell doors for others participating in Ramadan, but refused to open Plaintiff's cell door. (*Id*. at 7.) Later that day, Sorci refused Plaintiff's request to open the unit's activity room, which had been approved for their prayer times. (*Id*.)

Again, based on these allegations Plaintiff was permitted to proceed with claims under the First Amendment's Free Exercise Clause and RLUIPA. (ECF No. 5 at 4-6.)

**B. Analysis**

**1. Defendants' Argument**

Defendants assert that NDOC's Faith Group Overview (ECF No. 18-2) details the twenty-eight recognized faith groups along with their respective dietary requirements, holy days, worship practices and allowable religious property. (ECF No. 18 at 4.) Plaintiff changed his faith group affiliation from Islam to MSTA, and this affiliation change was approved by the prison as of March 19, 2015. (ECF No. 18-1 at 2.) Defendants contend that it is "illogical" to allow an inmate to identify as a follower of more than one faith group. (*Id*.) They go on to argue: "In Count I, Plaintiff's [sic] is attempting to lay claim via § 1983 action to a religious right that is not specified to his faith group" since he alleges a denial of participation in Ramadan in June-July of 2015 when his identified faith group observes Ramadan in October. (*Id*.) They contend that Plaintiff fails to state a claim because he is trying to "assert a denial of his constitutional ability to worship his religion by practicing another religion's holy days." (*Id*.)

**2. First Amendment Free Exercise Clause**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir.

2013) (citations and quotation marks omitted, alteration original). "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)).

To implicate the free exercise clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. The inquiry is not whether a belief is a central tenet of the inmate's religion. *See id.* at 885. Moreover, "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 715-16 (1981).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "'A substantial burden … place[s] more than an inconvenience on religious exercise; it must have tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.*" McElyea v. Babbitt*, 833 F.3d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972*); Hartmann*, 707 F.3d at 1122; *Shakur*, 515 F.3d at 883-84. The challenged conduct is "valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. 342, 348 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*. *See O'Lone*, 482 U.S. at 349. The *Turner* factors are: (1) "there must be a 'valid, rational connection' between the

prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *O'Lone*, 482 U.S. at 349.

Defendants appear to argue in their motion: (1) that Plaintiff cannot have a sincerely held religious belief in observing Ramadan along with the "orthodox" Muslims because he changed his faith group affiliation to MSTA, who observe Ramadan in October; and (2) that Sorci could not have substantially burdened the practice of Plaintiff's religion by not allowing him to participate in Ramadan with the "orthodox" Muslims because that was not his declared faith group.

First, the court will address the religious exercise element of Plaintiff's claim. The court's inquiry under the First Amendment's Free Exercise Clause is not whether observing Ramadan along with the "orthodox" Muslims is central to Plaintiff's faith when he affiliated himself with MSTA; instead, the inquiry is whether he sincerely believes that observing Ramadan with MSTA as well as with the "orthodox" Muslims is consistent with his faith. *See Shakur,* 514 F.3d at 885.

Defendants do not directly state that Plaintiff does not have a sincerely held belief in the observance of Ramadan with the "orthodox" Muslims, but implicitly argue this point when they contend that Plaintiff cannot adopt the holy month observations of another faith group. Specifically, they argue that because he changed his faith group affiliation from "orthodox" Muslim to MSTA, he may only observe Ramadan in October, or he must change his faith group affiliation back to "orthodox" Muslim. (*See* ECF No. 18 at 4:11-12; ECF No. 23 at 4:19-22.)

Plaintiff, on the other hand, provides a sworn statement that he does in fact have a sincere belief that he is obligated to observe Ramadan not only in October with the MSTA, but also when Ramadan is observed by "orthodox" Muslims according to the Arabic calendar (which fell between June 17 and July 18 in 2015). (ECF No. 22 at 9-10; Pl.'s Decl., ECF No. 11 at 14.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff states that he is a "card holding member" of the MSTA, which he explains is a social and religious organization founded in 1913 by Nobel Drew Ali (whom Plaintiff believes is a prophet of Allah). (ECF No. 11 at 14-15.) He describes MSTA as more flexible than "orthodox" Islam. (*Id*. at 15-16.) Plaintiff maintains that his observance of Ramadan in both October (with the MSTA), and when it is observed by the "orthodox" Muslims according to the Arabic calendar, is compelled by the Quran, which he believes is the word of God. (ECF No. 22 at 9-10, 17-23.)

Defendants assert that Plaintiff's faith group affiliation change from "orthodox" Muslim to MSTA is evidence that he does not have a sincere religious belief in observing Ramadan with "orthodox" Muslims because his faith group observes Ramadan in October. Plaintiff, however, has presented sworn statements that irrespective of his faith group affiliation, he sincerely believes his faith obligates him to observe Ramadan and fast in October with MSTA and along with the "orthodox" Muslims in accordance with the Arabic calendar. Therefore, Plaintiff has raised a genuine dispute of material fact as to whether his sought-after religious exercise implicates the First Amendment.

Second, the court will address the substantial burden aspect of Plaintiff's claim. "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Jones*, 791 F.3d at 1033 (citations omitted).

Defendants argue that Plaintiff's modification of his faith affiliation from Islam to MSTA is evidence that Sorci did not substantially burden Plaintiff's ability to freely exercise his religion because his designated faith group, MSTA, observed Ramadan in October. Notably, Defendants' motion fails to address any of the *Turner* factors so as to establish Sorci's conduct is reasonably related to legitimate penological interests. Instead, they merely argue that it is "illogical" to allow an inmate to adopt a faith observation of any faith group other than the one he has declared with the prison.

In any event, Plaintiff presents evidence that he has a sincerely held religious belief that he is obligated to observe Ramadan with the MSTA in October and along with "orthodox"

Muslims when they observe Ramadan according to the Arabic calendar. He maintains that Sorci substantially burdened his ability to exercise his religion when he had been approved by prison administrators to participate in Ramadan in the June to July 2015 timeframe and Sorci refused to allow Plaintiff out of his cell to eat his meals before sunrise and engage in prayer and Quran readings. As such, Plaintiff has raised a genuine dispute of material fact with respect to whether his religious exercise was substantially burdened.

For these reasons, Defendants' motion should be denied insofar as the First Amendment Free Exercise Clause claim in Count I is concerned.

### 2. RLUIPA

Section 3 of RLUIPA provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[ ] to accord religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v. *Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief ..., and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted); *see also Hartmann*, 707 F.3d at 1124 (citing 42 U.S.C. § 2000cc-2(b)). Thus, the court must begin by "identifying the 'religious exercise' allegedly impinged upon.'" *Greene*, 513 F.3d at 987. "Religious exercise" under RLUIPA is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, the concept of religious exercise "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."

42 U.S.C. § 2000cc-3(g). "[A] prisoner's request for an accommodation [, however,] must be sincerely based on a religious belief and not some other motivation." *Holt,* 135 S.Ct. at 862 (citing *Burwell v. Hobby Lobby Stores, Inc.,* 134 S.Ct. 2751, 2774, n. 28 (2014)).

Preliminarily, as with the free exercise claim, there is a genuine dispute of material fact regarding whether Sorci's conduct implicates Plaintiff's religious exercise. Defendants assert that Plaintiff's faith modification from Islam to MSTA is evidence that observing Ramadan along with "orthodox" Muslims is not a sincerely held religious belief of Plaintiff. In response, Plaintiff submits evidence that his faith requires him to observe Ramadan along with MSTA and with "orthodox" Muslims.

Next, the court will address whether Sorci's conduct substantially burdened Plaintiff's exercise of his religion. Under RLUIPA, it is irrelevant whether Plaintiff was able to engage in other forms of religious exercise, *i.e.,* whether Plaintiff was also able to observe Ramadan in October. *See Holt*, 135 S.Ct. at 862. In addition, RLUIPA "applies to an exercise of religion regardless of whether it is 'compelled.'" *Id*. (citing 42 U.S.C. § 2000cc-5(7)(A).) As with the Free Exercise Clause, RLUIPA "'is not limited to beliefs which are shared by all of the members of a religious sect.'" *Id*. at 862-63 *(*quoting *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 715-16 (1981)).

"[T]he 'exercise of religion' often involves not only the belief and profession but the performance of...physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter*, 544 U.S. at 720 (internal citation and quotation marks omitted); *see also Greene*, 513 F.3d at 988 (concluding group worship was the "religious exercise" at issue).

A "substantial burden" on "religious exercise" "must impose a significantly great restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "In the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held that a substantial burden occurs 'where the state...denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on the adherent to modify his behavior and

to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)) (internal quotation marks omitted).

Defendants argue that there could not have been a substantial burden on Plaintiff's religious exercise when Sorci refused to allow Plaintiff out of his cell to participate in Ramadan in June 2015 because at that time he identified as a member of MSTA, a faith group that observed Ramadan in October. Plaintiff responds with sworn statements that he has a sincere belief that his faith obligates him to observe both months of Ramadan, and Sorci precluded him from participating in Ramadan on June 20 and 24, 2015. Since RLUIPA applies to religious exercise, whether or not compelled by a particular faith, and because RLUIPA is not limited to beliefs shared by all members of a religious sect, Plaintiff has raised a genuine dispute of material fact as to whether his religious exercise was substantially burdened.

If there is a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b).

Defendants did not address the compelling interest issue in their motion, but in their reply brief they argue that any burden on Plaintiff's religious exercise is justified by a compelling government interest. (ECF No. 23 at 7.) Defendants cite safety and security as the compelling interest justifying Plaintiff's preclusion from observing Ramadan in June/July of 2015, stating that this was the least restrictive means of justifying that end. (*Id*.) They go on to argue that allowing inmates to pick and choose their faiths would put the NDOC in an untenable position. (*Id.* at 8.)

Prison officials cannot "justify restrictions on religious exercise by simply citing the need to maintain order and security in a prison. RLUIPA requires more." *Greene*, 513 F.3d at 989-90. Defendants are correct that courts are to apply RLUIPA's standard with due deference to prison administrators; however, "RLUIPA does not permit … unquestioning deference." *Holt*, 135 S.Ct. at 858 (2015). RLUIPA "contemplates a 'more focused' inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of

the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id*. at 863 (quoting *Hobby Lobby,* 134 S.Ct. at 2779). "RLUIPA requires [the court] to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." *Id*. (quoting *Hobby Lobby*, 134 S.Ct. at 2779).

While Defendants cite safety and security and contend that allowing inmates to pick their faiths would put them in an "untenable" position, they do not provide the focused inquiry mandated by the Supreme Court. That is to say, they fail to explain, let alone provide any evidence, regarding how allowing Plaintiff to observe Ramadan with "orthodox" Muslims would implicate any specific safety and security concern, particularly where he had received some sort of administrative approval to participate in observance of Ramadan with the "orthodox" Muslims. Reliance on a generalized safety and security concerns, as Defendants have done here, is insufficient.

In addition, while Defendants provide a conclusory statement that refusing to allow Plaintiff to participate in Ramadan was the least restrictive means of advancing their compelling government interest, they do not explain how this is the case. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 135 S.Ct. at 864 (quoting *Hobby Lobby*, 134 S.Ct. at 2780).

While the court appreciates that, as a general matter, a policy allowing inmates to observe the rituals of more than one faith group may create some logistical problems for the prison, RLUIPA requires Defendants to address how Plaintiff, who currently affiliates with MSTA, which according to Plaintiff, has a significant connection to Islam, presents a safety and security risk by observing Ramadan with the "orthodox" Muslim inmates. Even without an explanation from Defendants, the court is skeptical that precluding Plaintiff from observing Ramadan with the "orthodox" Muslims furthered a compelling interest in safety and security of the prison, or that this was the least restrictive means of furthering that interest. Plaintiff had

apparently been given approval from someone within the prison to participate. (*See* ECF No. 22 at 24.) The prison was already supervising the security of the other "orthodox" Muslim inmates observing Ramadan, such that it would have already had measures in place to address safety and security concerns posed by inmates being allowed to access the tier early in the morning to eat their meals and engage in prayer. There is no indication Plaintiff presented any particular security concern or escape risk. As such, Defendants have failed to show that Sorci's conduct furthered a compelling government interest and that it did so by the least restrictive means.

In sum, Defendants' motion should also be denied with respect to the RLUIPA claim in Count I.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge convert Defendants' motion into one for summary judgment, and **DENY** the motion.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: April 20, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE